UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TIFFANY HOPE BRAKEFIELD,

    Plaintiff,

v.                                      Case No.:  2:23-cv-24-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

# ORDER

Plaintiff Tiffany Hope Brakefield challenges the Commissioner of Social Security's decision denying her application for Social Security Disability Insurance benefits under 42 U.S.C. § 405(g). (Doc. 1.)[1] For the reasons below, the Commissioner's decision is affirmed.

## I. Background

The procedural history, administrative record, and law are summarized in the parties' briefs (Doc. 24, Doc. 26, Doc. 27) and not fully repeated here. Brakefield filed for benefits in 2020, claiming she was disabled as of May 29, 2014. (Doc. 24 at 2.) Brakefield's petition was denied initially and again on

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

reconsideration. (Doc. 24 at 2.) She then exercised her right to further review before an Administrative Law Judge (ALJ).

Following a hearing, the ALJ found that Brakefield had severe impairments to include lumbar degenerative disc disease, cervical degenerative disc disease, supraventricular tachycardia, fibromyalgia, migraine, obesity, dyspnea, tremor, and remoted right knee degenerative joint disease status-post surgery. (Tr. 15.) Brakefield also had hypertension, sleep apnea, rectal bleeding, epigastric tenderness, major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder, which the ALJ determined were non-severe impairments. Even with these conditions, the ALJ found Brakefield had the residual functioning capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to occasionally climb stairs and ramps but never climb ladders and scaffolds; occasionally balance, stoop, and crouch; never kneel or crawl; frequently reach, handle, and finger; avoid concentrated exposure vibration; avoid all moving mechanical parts and unprotected heights; and occasional concentrated exposure to atmospheric conditions as defined by the Selected Characteristics of Occupations of the DOT.

(Tr. 24.)[2]

---

[2] An individual claiming disability benefits must prove she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets

After considering the RFC and testimony from a vocational expert ("VE"), the ALJ determined Brakefield could perform her past relevant work as a pharmacy technician and furniture salesperson. Further, according to the ALJ, she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy[.]" (Tr. 32, 34.) Because Brakefield could perform past relevant work, the ALJ found she was not disabled as that term is defined in this context. (Tr. 34-35.) Brakefield then exhausted her administrative remedies, and this lawsuit followed. (Doc. 1.)

## II. Standard of Review

"It is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021). So "[r]eview of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied." *Holland v. Comm'r of Soc. Sec.*, No. 2:21-CV-858-KCD, 2023 WL 2300593, at *2 (M.D. Fla. Mar. 1, 2023). Substantial evidence means "such relevant evidence as a reasonable mind

---

or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

3

might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). As the Supreme Court has explained, "whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). But the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner, her decision must be affirmed if it is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Id*.

### III. Analysis

Brakefield presses six arguments on appeal. First, she claims the ALJ erred in finding she can perform her prior work as a furniture salesperson and pharmacy technician. (Doc. 24 at 6-10.) Second, she argues the ALJ erred in

determining there are other jobs in the national economy she can perform. (Doc. 24 at 10-13.) Third, she alleges the ALJ erroneously found she can perform jobs that require more than very short on-the-job training. (Doc. 24 at 13-16.) Fourth, she maintains she will miss too many days of work to sustain competitive employment. (Doc. 24 at 17-23.) Fifth, she asserts the ALJ erred when he determined that her mental health impairments are non-severe and failed to address them in her RFC. (Doc. 24 at 23-32). And finally, she contends the ALJ was required to obtain the records from her prior, unsuccessful applications for SSA benefits and include them in the record but did not do so. (Doc. 24 at 32-34). The Court will address each argument in turn.

### A. The ALJ Did Not Err in Finding Brakefield Could Perform Her Prior, Relevant Work as it is Generally Performed

A claimant's RFC is the most she can do despite her limitations and is determined by evaluating all the relevant evidence in the record. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). At step four of his analysis, the ALJ addressed Brakefield's RFC and her ability to work. The ALJ determined Brakefield could perform light work as defined in 20 §§ CFR 404.1567(b) and 416.967(b). (Tr. 24.) "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it

5

involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

At the hearing, the vocational expert testified that Brakefield's past work as a pharmacy technician and furniture salesperson would require "light exertion." (Tr. 78-79.) He also testified that a hypothetical person with Brakefield's RFC, work history, and education could perform those jobs as they are generally performed in the national economy. (Tr. 79-80.) Based in part on this testimony, the ALJ concluded Brakefield could resume work as a pharmacy technician and furniture salesperson. (Tr. 32.)

"A claimant seeking disability benefits bears the burden of proving that [s]he cannot perform [her] past relevant work either as [s]he performed it or as it is generally performed in the national economy." *Hubbard v. Comm'r of Soc. Sec.*, 348 Fed. App'x. 551, 553 (11th Cir. 2009). Brakefield asserts she cannot perform her past work as a furniture salesperson and pharmacy technician "because the job requirements for standing and lifting exceed the RFC." (Doc. 24 at 7.) Her only support for this conclusion is data from the Standard Occupational Classification ("SOC") and the Occupational Requirements Survey ("ORS"), which are prepared by the U.S. Bureau of Labor Statistics. (Doc. 24 at 8-9.)

In determining whether a claimant can perform work within the national economy, the Commissioner can "take administrative notice of

6

reliable job information available from various governmental and other publications," including the DOT, the County Business Patterns, Census Reports, Occupational Analyses, and the Occupational Outlook Handbook. 20 C.F.R. § 404.1566(d). The regulations also let the Commissioner base his decision on information supplied by a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Brakefield seems to argue that remand is required for the ALJ to address an alleged conflict between the RFC and data within the ORS and SOC. The Court disagrees that the record presents reversible error.

First, the Commissioner has not taken administrative notice of data from the SOC or ORS, nor has either source been recognized as authoritative. *See, e.g.*, 20 C.F.R. § 416.966(d) (taking administrative notice of certain job data). Thus, "[t]he ALJ was not required to resolve conflicts between the vocational expert's testimony and the ORS [or SOC]." *Koehler v. Comm'r of Soc. Sec.*, No. 2:22-CV-210-JES-KCD, 2022 WL 18672970, at *5 (M.D. Fla. Nov. 10, 2022). Second, "under the substantial-evidence standard, a court looks to an existing administrative record." *Id.* at *6. Brakefield did not cite the ORS or SOC data to rebut the vocational expert's testimony at the hearing or otherwise provide it to the ALJ. (Tr. 82-84, 472-474.) Rather, she first cites the ORS and SOC data in her brief to the Appeals Council, following the ALJ's adverse decision. (Tr. 491-525.)

7

Brakefield is challenging the ALJ's adverse decision, not the Council's decision to deny review. (Doc. 24 at 1-2.) "[W]hen a claimant challenges the administrative law judge's decision to deny benefits, but not the decision of the Appeals Council to deny review of the administrative law judge, we need not consider evidence submitted to the Appeals Council." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1266 (11th Cir. 2007). The ORS and SOC data in Brakefield's brief was submitted to the Appeals Council but is not part of the administrative record. Thus, the Court need not consider it. *See*, e.g., *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 832 (11th Cir. 2011); *Koehler*, 2022 WL 18672970, at *6.

Regardless, substantial evidence supports the ALJ's reliance on the vocational expert's testimony. As explained, a vocational expert may rely on DOT data. And an ALJ may credit a vocational expert's opinion even without statistical support. *Koehler*, 2022 WL 18672970, at *6. Brakefield has not shown a "reasonably ascertainable or evident" conflict between the DOT data and the vocational expert's testimony. *Id*. Thus, substantial evidence supports the ALJ's conclusion.

Because Brakefield can perform her past relevant work as it is generally performed, it is irrelevant whether there are other jobs in the national economy for her. *Howdeshell v. Comm'r of Soc. Sec.*, No. 2:20-CV-514-SPC-MRM, 2021 WL 5496165, at *16 (M.D. Fla. Nov. 5, 2021). And the Court need not address

Brakefield's argument that she cannot perform the other jobs cited by the ALJ. (Doc. 24 at 10-13.) Finally, even if there was some shortcoming with the ALJ's analysis, it would be harmless given the Court finds no error with the ALJ's conclusion that Brakefield can perform past relevant work. *Howdeshell*, 2021 WL 5496165, at *17.

### B. The ALJ Did Not Err in Finding Brakefield Could Perform Work that Requires More than Very Short On-the-Job Training

The ALJ determined Brakefield could work as a pharmacy technician, furniture salesperson, order clerk, account clerk, and call out operator. She asserts these jobs have specific vocational preparation ("SVP") levels of 2, 3, and 4. (Doc. 24 at 14.) This is problematic, according to Brakefield, because the Social Security Administration has acknowledged that she can only perform work with "a very short, on-the-job training period equating to SVP 1[.]" (*Id.* at 16.) As support, Brakefield cites two letters from the Social Security Administration informing her she did not qualify for benefits. (Tr. 185, 189.) Each letter states, "disability cannot be established because you are still capable of performing work that requires less physical effort, and only a very short, on-the-job training period." (Tr. 185, 189.) Thus, Brakefield alleges the ALJ committed reversible error.

A few problems. First, the Social Security Administration never limited Brakefield to SVP 1 work. The Social Security Administration said she is

9

"capable of performing work that requires less physical effort, and only a very short, on-the-job training period." (Tr. 185, 189.) This statement does not have an SVP component, and Brakefield fails to explain how these limitations translate to only SVP 1 work. *Koehler*, 2022 WL 18672970, at *6.

Second, and equally preclusive, the statement above was made by the Social Security Administration's disability examiner. Thus, the ALJ had good reason for ignoring it: "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [the claimant is] disabled" are "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). As a result, the ALJ "will not provide any analysis about how [he] considered such evidence in [his] determination or decision." *Id*. Under this framework, the ALJ did not have to incorporate the disability examiner's findings even if they somehow limited Brakefield to SVP 1 work. *See Flores v. Kijakazi*, No. 8:22-CV-958-WFJ-AEP, 2023 WL 6782270, at *8 (M.D. Fla. Aug. 14, 2023) ("If, as here, a claimant requests an administrative hearing, the ALJ must base [his or her] decision on the preponderance of the evidence offered at the hearing or otherwise included in the record.").

Finally, courts in this district have repeatedly rejected Plaintiff's exact argument. *See Flores*, 2023 WL 6782270, at *8 (collecting cases). The letters cited by Brakefield simply state she can work. Brakefield mischaracterizes the

10

letters when she argues they are binding decisions that restrict her to SVP-1 level jobs. The content of the letters does not justify reversal.

### C. The ALJ Did Not Err in Considering the Effect of Brakefield's Treatment Record on Her Ability to Work

At the hearing, the vocational expert testified that a person with Brakefield's RFC who "would be on task 85 percent or less of the day or absent from work two or more days per month," could not work because employers generally provide workers six absences per year. (Tr. 81.) Brakefield alleges she attended forty-three medical appointments in twenty-eight months and would thus miss too many days of work in the future to sustain employment. (Doc. 24 at 17-22.) The Court is not persuaded.

Evidence that Brakefield attended medical appointments over a particular period is not, on its own, evidence of future absenteeism. *Sailem v. Kijakazi*, No. 2:21-CV-103, 2023 WL 2564346, at *6 (S.D. Ga. Mar. 1, 2023). "[A]ny connection between Plaintiff's appointments and future absenteeism is purely speculative as it is based solely on her general medical history." *Id*. "[N]othing in the record indicates [Brakefield] was required, or would be required, to schedule her medical appointments during working hours or for an entire working day such that her appointments would interfere with her ability to obtain work or maintain a job." *Martinez v. Kijakazi*, No. 8:20-CV-1025-TPB-AEP, 2021 WL 4482616, at *10 (M.D. Fla. Aug. 23, 2021).

"As SSR 96-8p states, the RFC is an assessment of an individual's ability to perform sustained work-related physical activities in a work setting on a regular and continuing basis, meaning eight hours per day, five [days] per week, or an equivalent work schedule. [Brakefield] has not demonstrated that her purported absenteeism would prevent her from scheduling her appointments outside of working hours for a regular or equivalent work schedule." *Id*. As a result, the ALJ did not err in finding Brakefield could work despite the number of medical appointments she attended.

### D. The ALJ Considered Brakefield's Mental Impairments as Part of her RFC and Did Not Err in Finding they were Non-Severe

Brakefield next argues the ALJ erred in finding her mental health impairments to be non-severe. Relatedly, she claims the ALJ erred by not addressing them as part of her RFC. (Doc. 24 at 23-32.)

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When, as here, the claimant alleges a mental impairment "the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as Paragraph B criteria. The four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324-25 (11th Cir. 2021). The ALJ rates the claimant's limitations

12

in each area as none, mild, moderate, marked, or extreme and must explain his rating. *Id.* at 1325. Ultimately, "to find the presence of a [severe] mental impairment, the ALJ must find that a claimant has an extreme limitation in one of the four functional areas or a marked limitation in two." *Id.*

Brakefield has three medically determinable mental impairments: major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder. (Tr. 16.) The ALJ's opinion contains a robust review of the record evidence and repeated citations to her doctors' notes. The ALJ also considered the effect of Brakefield's mental impairments on her ability to (1) understand, remember and apply information, (2) interact with others, (3) concentrate, persist, and maintain pace, and (4) adapt and manage herself. (Tr. at 16-20.) Based on his review of the evidence, the ALJ determined Brakefield's mental impairments resulted in no more than "mild limitations" in each category. (Tr. 18-20.) He also concluded that whether considered singly or in combination, her mental impairments "do not cause more than minimal limitation in [her] ability to perform basic mental work activities are therefore non-severe." (Tr. 16.) Thus, Brakefield's mental impairments were not severe.

Brakefield argues the mild limitations, taken together, "reflect a severe impairment." (Doc. 24 at 26.) But she does not "show [an] absence of substantial evidence supporting the ALJ's conclusion." *Bloodsworth*, 703 F.2d

13

at 1239. Instead, she asks the Court to reweigh the evidence. The Court must decline. *Id*.

Brakefield then pivots, arguing that even if her mental impairments were not severe, the ALJ had to include them "in the RFC." (Doc. 24 at 28.) This is true, but the ALJ considered Brakefield's non-severe mental impairments in determining her RFC. The ALJ spent several pages discussing the evidence related to Brakefield's mental impairments. (Tr. 16-20.) The ALJ noted there is "little record evidence [of her mental impairments] from 2014 to 2016" before citing her doctors' records, which describe a patient with "normal mental status," "normal affect, and no impairment of thought content," and "normal thought content and thought process." (Tr. 16-18.) Against this backdrop, the ALJ found "no severe mental impairments and **no mental limitations**." (Tr. 18 (emphasis added).) The ALJ added that he was:

> persuaded by the opinions of the state agency psychologists who opined the claimant had no severe mental impairments and **no mental limitations**. The opinions are supported by references to the medical record evidence and are consistent with stable and normal findings on examination, treatment history, and activities of daily living including working as a pharmacy technician at Publix from August 2019 to June 2020, traveling by bus to Orlando Florida, cooking, cleaning, and shopping.

(Tr. 30 (emphasis added).)

14

The ALJ also discussed the opinions of Dr. Kasprzak and Dr. McNally in conjunction with Brakefield's RFC. He found Dr. Kasprzak's opinion that Brakefield "had the requisite skills and cognitive capacity to manage finances independently of others" persuasive. (Tr. 31.) The ALJ remarked this opinion was consistent with the "generally stable and normal findings on examination" and Brakefield's treatment history and activities of daily living. (Tr. 31.) But he was unpersuaded by Dr. McNally's opinion that Brakefield "had difficulty doing simple tasks that require minor decision making and judgments." (Tr. 31.) The ALJ found this opinion was inconsistent with the medical records, treatment history, and activities of daily living.

In sum, the ALJ found that Brakefield had mental impairments, but those impairments did not result in mental limitations. This conclusion was supported by competent substantial evidence. Plaintiff's argument that the ALJ erred in failing to find her mental health impairments were severe or to address them in her RFC does not justify reversal.

### E.  The ALJ Did Not Err by Failing to Obtain Prior Records

Finally, Brakefield contends the ALJ had to obtain records from her prior, unsuccessful applications for SSA benefits but did not do so. (Doc. 24 at 32-34.) While she acknowledges that she could not reopen those applications, she asserts the files had medical evidence relevant to this claim. She argues that under the "Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-

15

2-6-52, an ALJ must rule on the record regarding any prehearing requests made by the claimant or representative. The ALJ failed to do so in this case." (Tr. 33.)

Two points. First, Brakefield asked for "all prior disability files on this case" and that "all applications within a possible reopening period" be considered at the hearing and included in the exhibit list. (Tr. 473.) Her request for the files related to her earlier applications was intertwined with her request that the past claims be reopened. The ALJ denied both requests:

> The claimant also requested that the undersigned consider and reopen any prior applications for disability insurance benefits which may be subject to reopening, and that the complete application files associated with any such prior applications be obtained and included. However, the undersigned declines to reopen prior applications.

(Tr. 12.) But had Brakefield believed the record was incomplete, she could have raised the issue at her hearing. She did not. Instead, her attorney told the ALJ that the record was "***complete*** and up to date." (Tr. 61 (emphasis added).)

Second, "the Eleventh Circuit has indicated in several unpublished decisions that HALLEX does not create judicially enforceable rights, particularly where a plaintiff fails to establish prejudice." *Clark v. Comm'r of Soc. Sec.*, No. 8:20-CV-1261-WFJ-JSS, 2022 WL 428503, at *4 (M.D. Fla. Jan. 14, 2022) (collecting cases). "Prejudice at least requires a showing that the ALJ

16

did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id*. Brakefield does not argue the absence of the files from the record resulted in prejudice. (Doc. 24, Doc. 27.) Nor has she shown that the ALJ "did not have all of the relevant evidence before him in the record." *Clark*, 2022 WL 428503, at *4. Instead, she asserts their omission is itself reversible error. It is not.

Finally, even if Brakefield had argued she was prejudiced by their omission, the same result would follow. She has not identified what items in her past applications needed to be considered. She states she does not know what is within the files. (Doc. 27 at 3.) This does not amount to prejudice. *Clark*, 2022 WL 428503, at *4 (rejecting prejudice argument claiming it was possible there was something beneficial within the prior SSA application, but the claimant could not know without reviewing them).

## IV. Conclusion

Substantial evidence supports the ALJ's findings, and Brakefield has not shown error. Accordingly, the Court **AFFIRMS** the Commissioner's decision and directs the Clerk to enter judgment for the Commissioner and against Tiffany Hope Brakefield and close the file.

**ORDERED** in Fort Myers, Florida this January 16, 2024.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

18